FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

13 NOV 22 PM 4:40

OFFICE OF THE CLERK

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEBRASKA**
Roman L. Hruska Federal Courthouse,
111 South 18th Plaza, Suite 1152, Omaha, NE 68102

---

8:13CV342

Nikki Lee (aka Nick Lee)
3131 Trillium Lane
Oxford, Michigan 48371
Petitioner/Movant

Ref. Case No. 12-CR-126
(Eastern District of Wisconsin)

v.

United States of America
Office of the United States Attorney
Eastern District of Wisconsin
517 East Wisconsin Avenue, Room 530
Milwaukee, Wisconsin 53202
Respondent

**MOTION FOR A HEARING PURSUANT TO CRIMINAL RULE 41(g), AND THE RIGHTS GUARANTEED UNDER THE FIRST, FIFTH AND SIXTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES**

Now comes Mr. Nikki Lee, pro se, to bring this Motion before this Honorable Court to hold a hearing pursuant to Federal Rule of Criminal Procedure 41(g) concerning property seized in this jurisdiction by agents of the U.S. government on January 4, 2012, and which movant states is either not traceable to any criminal activity and/or is legally owned by innocent owner Daric Wellens and/or Lee, or jointly by them, and which is not subject to forfeiture. Further, Lee states that he has been aggrieved by the unlawful seizure and the deprivation of the property and that he has legal interest in the property. Lee moves pursuant to Criminal Rule 41 (g), as he is the Defendant in Case No. 12-CR-126 in the Eastern District of Wisconsin.

**Jurisdiction**

This court has jurisdiction under Federal Rule of Criminal Procedure 41(g) Search and Seizure which states:

"41(g) Motion to Return Property. A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be ***filed in the district where the property was seized.*** The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings." (Emphasis added) U.S. v. Felici, 208 F.3d 667, 670-71 (8th Cir. 2000)

Lee requests the court to conduct a prompt hearing where the government will be required to prove that the seized property is traceable to violations of federal law as charged in Case No. 12-CR-126 beyond a reasonable doubt and that all of the assets seized and currently restrained were derived from or traceable to the alleged criminal activity.

Further, he asks that the government be required to show that the pretrial, pre-conviction seizure and detention of said property, depriving the owners of the enjoyment, use, employment, and possession of said property for two years, without Due Process of Law, was necessary, required, based upon legally justifiable cause and did not violate the rights guaranteed to the owners under the U.S. Constitution, specifically Amendments One, Five and Six.

Lee asks for this Court to require a rendering of factual certainty beyond a reasonable doubt by the government as required by law, the United States Constitution and requirements under Nebraska property owner laws.

Lee states that he has no other remedy under law as "a person aggrieved" by government seizure of the property and the deprivation of the property from the innocent owners, himself and his brother, Daric Wellens. He states that he is guaranteed redress against the United States of America by the First Amendment to the U.S. Constitution in the Bill of Rights, which states:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

Further, this motion is brought pursuant to the Fifth Amendment of the Constitution of the United States which provides to all citizens the right to Due Process under the laws, stating,

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

Further, the Constitution states in the Sixth Amendment:

"In all criminal proceedings, the accused shall enjoy the right to have the assistance of counsel for his defense."

**Moving Party: Nikki Lee**

Nikki Lee stands as an innocent owner of some of the property seized and retained for two years by defendant and claims legal co-interest with his brother, Daric Wellens, in some of the items seized.

Lee is a natural born American and at age 50, has no criminal convictions and in his lifetime has been both employed and worked as a self-employed entrepreneur. He worked with partners in construction and renovating real estate for years and also opened a coffee shop in Wisconsin. He is also an expert mechanic and his hobby was in building motorcycles and related performance skills.

After filing bankruptcy in 2008 due to the failure of his coffee shop and a poor economy, he started a motorcycle stunt rider business and toured the country at rallies and other events under the name, "World Burnout Tour" as he holds the record for motorcycle burnouts. He is a master mechanic, excels in construction and anything mechanical/electrical, but has limited academic skills. His touring show features collectible vehicles he has customized and personally built. He worked out a deal with Haulmark Industries, who loaned him a motor coach RV and trailer to use and to advertise for them on his nationwide tour. Lee lived in this "home on wheels" from the summer of 2008 until it was suddenly seized by agents on January 4, 2012; it was his home for 3 ½ years.

Lee has also been a federal Class III firearms dealer since the 1990's, abided by the federal firearms rules, and never had anything more than minor paperwork issues to correct. Lee relies upon the literate skills of others for his records and accounting, as he is handicapped by illiteracy due to reading conceptual problems. In the past his business accounting has been completed by attorneys, accountants, business partners and a professional business manager.

Lee and his brother Daric Wellens were born of the same mother but separated as young boys upon their mother's death in a motorcycle accident. Wellens was reared by his natural father and Lee was reared by his maternal grandfather. The two men were reunited after twenty years separation only recently in August of 2011, at the Sturgis Motorcycle Rally, just months before the government seizure of their property in Nebraska.

**Co-Owner/Innocent Owner Daric Wellens**

As a titled owner of the property, Daric Wellens stands as an innocent owner of seized property. He and his family have been residents of the State of Nebraska for five years. Wellens is also a natural born American citizen and has no criminal background.

Wellens retired from the United States Air Force with honors as a Senior Non-Commissioned Officer in 2007. Wellens is currently the chief of the Small Air Terminal and Passenger Services at Offutt Air Force Base in Nebraska. He has been employed by the Department of Defense Civil Service for nearly 4 years. Wellens completed 22 years of distinguished and honorable service in the Air Force. While on active duty, he supervised well over 250 personnel, won numerous awards such as SNCO of the Quarter on multiple occasions, Transportation Professional of the Year in 1998, and Air Combat Command Professional Provider of the Year in 2005. He is a highly decorated Gulf War and Operation Enduring/Iraqi Freedom veteran with 22 Medals/Ribbons. He earned the Meritorious Service Medal, the Air Force Commendation Medal with 5 oak

leaf clusters, the Joint Service Achievement Medal, and the Air Force Achievement Medal. He is married with one child and his wife is also a retired, highly decorated, Senior Non-Commissioned Officer. Wellens and his brother, Nikki Lee, were se

**Case Facts: The Pre-Indictment Ex parte Property Seizure**

On January 4, 2012, ATF Agent John Adamson accompanied by FBI Agent Daniel Hargreaves appeared at the home of Daric Wellens to ex parte seize a Haulmark motor coach RV, trailer and numerous vehicles contained in it, from the Nebraska location where it was parked. Both Lee and Wellens were present, as Lee was visiting his relatives during the holidays.

All the contents and the vehicles within the coach (per supplied information) were stored at the FBI Omaha office. Neither Wellens nor Lee has had the opportunity to present to a court of law, the argument that the property is not subject to forfeiture, nor has the government been required to show beyond a reasonable doubt that the property is traceable to criminal conduct. See the list of property seized, Exhibit A.

On August 3, 2012, (*seven months after the property seizure*) Lee was returning from a motorcycle rally, "Niagara, Canada Motorcycle Rally," when he was arrested on the Blue Water Bridge at Port Huron, Michigan. He had completed a contract obligation to perform at the Niagara rally by borrowing a motorcycle and truck from a friend, as the government had seized all performance equipment used in "The World Burnout Tour." At the Canadian border, agents seized the truck and motorcycle legally titled to Lee's friend, which paperwork was in the vehicle. Lee's friend had to work for nearly

two weeks on a daily basis to get back from the government, the motorcycle and truck he had loaned to Lee and to pay "storage" fees of nearly $1000.00. Lee's friend had been told it would take *at least 60 days* to get back the loaned equipment agents seized and he could not afford to be without his "work truck" or pay the "storage fees" for 60 days. Only constant, persistent daily contacts seemed to move government employees to release the innocent seized truck and motorcycle.

Lee had returned to his own country from Canada, returning from a rally performance, and was headed for Sturgis where he was expected, which appointment the government *was determined to destroy*, and was successful in that effort. They alleged he was a flight risk, but how could he be "fleeing" an indictment he knew nothing about?

At his arrest on August 3, 2012, Lee was first served with an indictment for criminal charges, to which he had NO previous knowledge. The indictment had been filed "sealed" in the federal court on 6/19/12 (five months after the seizure) even though at all times, Lee had been cooperative with agents and offered to talk to them at any time if charges were considered. The charges stem from Lee's 2008 bankruptcy and business prior to 2008, LONG BEFORE he reunited with Petitioner Wellens in 2011.

**Hearing Required Due to Deprivation of Constitutional Rights**

**A. Deprivation of Property with No Due Process of Law**

Nikki Lee and his brother have now been deprived of their seized property since January 4, 2012. Mr. Wellens contracted to borrow $65,000.00 in order to purchase

the Haulmark motor coach RV and trailer directly from the manufacturer (Haulmark Industries) in December 2011, and he was the first consumer to in fact purchase that property from the manufacturer. His purchase was made in good faith with no knowledge of, participation in, or incrimination with any criminal activity whatsoever, nor has any been alleged. The purchase also included a number of performance and display vehicles contained within the motor coach. Along with the vehicles, the government agents also DEMANDED that he provide them with the titles he held to the equipment.

Thus Wellens is an innocent owner wrongfully deprived of his property. In addition, he legally and in good faith purchased several of the seized motorcyles that were contained within the seized Haulmark motor coach and trailer, as further security for the loan he incurred. "A person holding legal title to an asset is genuinely the owner...prior to the decree of forfeiture." *U.S. v. A Parcel of Land (92 Buena Vista Avenue),* 507 U.S. 11, 123-24, 127 (1993).

Government agents were well informed that Mr. Wellens was negotiating along with Lee, to purchase the Haulmark motor coach RV and trailer from the manufacturer. In fact, agents were evidently aware of the purchase by Wellens, as *they made no attempt to seize the alleged "guilty property" from the manufacturer, Haulmark.* Agents waited until Wellens' purchase was complete and Mr. Wellens had in good faith, borrowed $65,000.00 in order to purchase the equipment used by his brother in his tour business, in order to assist his brother. The government has never been required to prove the "traceability" explaining how the vehicles owned by Haulmark in

December of 2011 were not seized, yet when Wellens borrowed the money to purchase the equipment in December 2011, and received the MSO's (Manufacturer's State of Origin) the Haulmark motor coach RV and trailer were suddenly "guilty" of some alleged crime committed prior to a bankruptcy in 2008.

Wellens continues to be required to make monthly payments on the loan he incurred to purchase this used equipment. Lee and Wellens had an agreement that Lee would continue to use the equipment for his World Burnout Tour and to make the payments on the $65,000.00 debt incurred by Wellens in order to purchase the equipment. Because Lee has been deprived of his ability to use the equipment in his touring business and thereby pay for the equipment through earned performance fees, Wellens is forced to make the payments himself. "[W]here no criminal proceedings against the movant are pending or have transpired," relief under Rule 41(g) is equitable in nature." *See Mora v. United States,* 955 F.2d 156, 158 (2d Cir.1992). Thus Wellens would deserve equitable consideration at a Rule 41 (g) hearing. The absence of a prompt, post-restraint adversarial hearing violates the Due Process Clause of the Fifth Amendment. *U.S. v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006). A procedural violation has occurred when (1) the government has deprived the defendant of a protected property interest and (2) the deprivation occurred without adequate procedural safeguards. *Cafeteria & Restaurant Workers' Union v. McElroy*, 367 U.S. 886 (1961).

Lee and Wellens undisputedly were deprived of their property rights. A protective order that deprives citizens of their interest in continued possession and use

of their property triggers a Due Process protections. *Fuentes v. Shevin*, 407 U.S. 67, 84, 86 (1972).

A hearing where *evidence is permitted*, not mere government statements, ensures Due Process of law. *United States v. Burton*,167 F.3d 410, 410-11 (8th Cir. 1999) (reversing and remanding where district court improperly denied Rule 41(e) (now 41(g)) motion without receiving evidence).

This motion is brought pursuant to the Due Process rights guaranteed by the Fifth Amendment of the United States Constitution and *U.S. v. Moya-Gomez*, 860 F.2d 306, 860 F.2d 706 (7th Cir. 1988). *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (the Due Process Clause of the Fifth Amendment "prohibits the *United States* . . . from depriving any person of property without 'due process of law'") (emphasis added).

**B. Deprivation of Constitutional Rights to Home and Employment**

Mr. Lee used the Haulmark motor coach RV and trailer from the summer of 2008 to the time it was seized, in an advertising deal he worked out with Haulmark, the manufacturer. He did not own the equipment as he was bankrupt and just building his new career as a rally performer. He built his business, "The World Burnout Tour" around the motor coach and trailer, and the bikes he personally customized and/or built himself, reinvesting tour income in his inventory. The motor coach WAS HIS HOME, as it was in fact a motor home on wheels with complete living quarters which he displayed at all the rallies, to advertise for Haulmark. He had no other home, having lost his home in the bankruptcy.

Thus, when agents seized this Haulmark equipment, they in fact, SEIZED LEE'S HOME, AND HIS EMPLOYMENT, suddenly and with no prior Due Process of Law. In *U.S. v. James Daniel Good Property*, 510 US 43 (1993) the Supreme Court held that the claimant was entitled to a hearing *in advance of trial and in advance of the seizure as well*, despite the fact that the defendant had already pled guilty to charges. Despite the conviction, the court still held that the defendant was entitled to a Pre-seizure hearing, finding that the *ex parte procedure used to seize a HOME* "affords little or no protection to the innocent owner because such a proceeding "need determine only that there is probable cause to believe that the property was used to facilitate the underlying ...crime." The Court was also critical that the government was not required to offer any evidence on *innocent ownership*.

Lee has been unable to work at his job since January 4, 2012. He has lived with a friend who he assists in exchange for room and board. In *Sniadach v. Family Finance Corp. of Bay View*, 395 U.S. 337 (1969) the U.S. Supreme Court held that it is unconstitutional to take a wage earner's source of income (or even half of it) without Due Process noting, it was "obvious, it needs no extended argument to conclude that absent notice and a prior hearing the prejudgment garnishment procedure violates the fundamental principles of due process." ((Id. At 342)

It is commonly recognized that the American citizen has a "right to work" and to use his skills and knowledge to legally make a living and support himself. In *Truax vs. Raich* (239 U.S. 33, 41), discussing the Fourteenth Amendment, Mr. Justice Hughes declared for the Supreme Court, "It requires no argument to show that the right to

work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the Amendment to secure." In *Allgeyer vs. Louisiana* (165 U.S. 589, 590), discussing the same amendment, the Supreme Court said that Due Process of Law means not only the right of the citizen to be free from the mere physical restraint of his person, as by incarceration, but "the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties: To be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or avocation, and for that purpose to enter into all contracts which may be proper, necessary, and essential to his carrying out to a successful conclusion the purposes above mentioned." In *Meyer vs. Nebraska* (262 U.S. 390, 399), again discussing the Fourteenth Amendment's guarantee of liberty, the Supreme Court declared "Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, *to engage in any of the common occupations of life*, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men."

The "right to work" is even established by the UN and ratified by the defendant government, as when The General Assembly of the United Nations Organization, better known as the UN, on December 10, 1948, passed the Universal Declaration of Human Rights, in Article 23 which invokes the right to work, stating: "1. Everyone has the right

to work, to free choice of employment, to just and favorable conditions of work, and to protection against unemployment."

It was clear and evident to the government agent that Lee had worked hard to build a new career after suffering bankruptcy in 2008, and that career was built around the Haulmark equipment purchased by his bother, Daric, who had enough credit to do so, while Lee did not. Also, the equipment was Lee's HOME, which agents also knew.

Thus, Lee has a *possessory, domicile and vocational interest* in the seized equipment, through an agreement with his brother and through the advertising commissions deal with Haulmark. Lee was to receive a sales commission on all similar Haulmark units sold by Haulmark. Lee displayed the units for 3 ½ years, conducted tours of the units, distributed literature for Haulmark and obtained free advertising space at rallies for Haulmark, valued at tens of thousands of dollars. To conclude the purchase of the units by Wellens, Lee *waived his rights to any said commissions* earned, thus investing his commissions in the equipment and in being able to use the equipment in future rallies.

The government's interest in ensuring funds for a future forfeiture does not rise to the level of a citizen's PROPERTY RIGHT. *U.S. v. A Parcel of Land*, 507 U.S. 111, 123-24, 127 (1993).

**Constitutional Violations**

Pretrial restraint of property of a defendant who maintains his innocence when that restraint deprives him of constitutionally protected rights is not warranted here,

where there was never any justification of such restraint, as we are dealing with vocational property, (almost all titled), and not easily disposed of as would be cash or drugs, for which such ex parte restraints were originally written.

The government at no time made any less invasive efforts or discussions with the owners of the equipment, as the USDOJ web site details is procedure. *No other options like a court order or agreement* not to dispose of the equipment were even evidently conceived by the government. The owners here are *both without criminal history* and one has a distinguished military record, has never been charged at all and is not implicated in anything but trying to help his long-lost brother.

Instead, at great trauma to the lives of still innocent citizens, incurring exceeding expense to the government, the defendant government calculated to seize all assets so that Lee was *left bereft of any ability whatsoever to defend himself against charges against him.* Not only was it a calculated effort to deplete all ability to defend, but in this case, it completely destroyed the defendant's hard-earned career in the rally industry, so that Lee could not even make an income to live or pay an attorney during the pendency of this case. This would be the equivalent of seizing every shred of assets in a doctor's office, leaving him bereft of his medical practice, equipment, supplies, and his home all at the same instant, or dismantling an entire law office along with all records, leaving the attorney standing in a vacant office to prepare for cases, and no home to go home to. Not only are assets gone, but taken is the ability to even pay the rent or feed oneself without help from friends, for two years now.

It is purely unconstitutional if not un-American to deprive an honored military veteran of his property without a hearing where Due Process of Law affords him an opportunity to be heard on his ownership rights to the property.

"We hold that 28 U.S.C. § 2461(c), enacted as part of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), does not authorize pretrial restraint of *assets subject to criminal forfeiture*. We therefore vacate the restraining order." *United States of America, Appellee, v. Tomo Razmilovic,* David E. Nachman, Defendants, Kenneth Jaeggi, Movant-appellant, United States Court of Appeals, Second Circuit. - 419 F.3d 134, Decided: August 17, 2005. That court further *stated of pretrial asset restraint*:

"Forfeiture is the 'divestiture of property without compensation,' Black's Law Dictionary 661 (7th ed.1999). In a criminal case, it constitutes punishment for a crime and **necessarily occurs post-conviction**. *See Libretti v. United States,* 516 U.S. 29, 38-39, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995); Fed.R.Crim.P. 32.2(b)(3) (order of forfeiture "must be made a part of the sentence and be included in the judgment"). The distinction between forfeiture and pretrial restraint is no technical play on words. Pretrial restraint is a severe remedy independent of a right to damages or property following a finding of liability. Indeed, the Supreme Court has dubbed pretrial restraint as a **"`nuclear weapon' of the law."** *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 332, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999) (pretrial restraint of debtor's assets in civil proceeding).

Movant merely requests a fair hearing as provided by law on the seizure and restraint of property so that the government can present beyond a reasonable doubt, why they have invoked a "nuclear weapon of the law" to require that the subject properties be seized and restrained at great government expense and in violation of Petitioners' constitutional rights in this case prior to any conviction.

## C. Deprivation of Right to Counsel of Choice: Sixth Amendment

Petitioner/Movant Nikki Lee has been deprived of his right to counsel in that:

1) Innocent property has been seized and cannot therefore be used for funds to hire an attorney of his choice, and

2) The seizure of the innocent property from himself and from Daric Wellens in fact seized his "employment" and his ability to earn a living at his job, and to therefore be able to continue working pending trial. Lee has had to turn down tens of thousands of dollars of requests for his appearances at rallies and events across the country due to the seizure of the property. In fact, no seizure was at all necessary, as the property was well kept and maintained, his brother was a bona fide purchaser and owner, and a simple court order not to sell anything would have sufficed.

3) Mr. Lee is illiterate and cannot even read the notices and forms he may have received, which the government knew and therefore in the critical months following the seizure, he was deprived of counsel (with no criminal charges pending) to even perfect his right to the property. He did what he could with the help of friends, but any process required of the U.S. Department of Justice requires literacy and is not "illiterate user friendly" at all. He has no factual knowledge of his rights to seized property, absent a reckoning at a hearing from the government.

The tactics of the government agency with a $5 Billion dollar forfeiture coffer at its disposal has prohibited a *defendant (who is illiterate)* from hiring an attorney of choice in a case with over 14,000 pages of Discovery and more accumulating, including the papers from Lee's grandfather's investments and estate, the Lee bankruptcy case, a failed coffee shop business, volumes of business records, an adversary proceeding, *in*

*addition* to the needs of a criminal defense. Mr. Lee is unable to even read the indictment against him without assistance. He has been prevented *from the very initial seizure*, from hiring and attorney and is now prevented from hiring a co-counsel whom his appointed counsel, Tony Cotton, has requested, as Mr. Chris Donovan, who has familiarity with bankruptcy law, could greatly buttress Lee's ability to defend himself if there were co-counsel. Lee's criminal case has been designated as "Complex" by the Court, and besides an assistant attorney, he needs funds for investigators, consultants, expert witnesses, testing, and paralegal support. Mr. Cotton is the FOURTH attorney in the criminal case, the first three bowing out because they could not handle the complexity and volume of this case, and Mr. Cotton has expressed the request for an assistant.

Lee is illiterate due to conceptual limitations. He cannot read or explain many of the background documents in his criminal case, and must have them read to him, and many vocabulary words explained, though he is mentally and intellectually competent. In his work career, he had hired accountants, attorneys, and a financial manager to handle his finances which must be organized into his defense to federal charges. Due to the property seizure, he has been unable to hire a co-counsel, or to obtain needed assessments for a defense, or any other defense assistance.

Indeed, Lee cannot afford to pay counsel to present this motion to the court. The injustice and inequity of the mighty United States Justice Department, which currently retains in its coffers over $5 BILLION dollars from seizures, pitched against a man who cannot read and has a minimal education, would seem a sufficient edge for

the government going into the courtroom. Yet the government argues for unbridled power to strip the citizen to a penniless state, take his home, take his job, months before he has any clue of an indictment, THEN slap him with and indictment (choosing a busy public bridge from Canada, no less). This case cries out for a hearing and some "balancing of the forces of fairness."

**D. Additional Considerations**

Additional equitable considerations may be relevant to whether this Court should exercise jurisdiction and set a hearing for this motion. *Ramsden*, 2 F.3d at 325. These include:

(1) Whether the Government displayed a callous disregard for the constitutional rights of the Petitioners, jointly and severally. As stated, the government agents knew that Mr. Wellens had purchased equipment from Haulmark in December 2011 and in fact incurred a sizeable debt in order to do so, and that Lee had NEVER owned the property. Instead of interviewing either party, they chose to seize property from a military veteran and his brother, both who had no history of criminal involvement at all. This is a pure case of complete callous disregard for the constitutional rights to Due Process of law.

(2) Whether the Movant/owners have an individual interest in and need for the property; Wellens needs the property for its purchased use: to be used in touring performances by his brother, who could be making the loan payments if he had the equipment. Lee's interest is that he has had his entire career sidelined, halted and all but destroyed by the seizure, plus he has been deprived of his domicile.

(3) Whether the Movant would be irreparably injured by denying a return of the property at this time. The property, stored by the government, sits idle and continues to deteriorate, at government expense. Lee is irreparably deprived of two years of employment (so far) and his career torpedoed by being deprived of the equipment to perform his job. Lee is deprived of needed funding for co-counsel and other defense expenses for his criminal defense.

For these reasons, Nikki Lee respectfully requests that this court conduct a hearing requiring the defendant government to show beyond a reasonable doubt that the individual seized properties are traceable to alleged criminal violations and/or that the properties currently restrained were derived from alleged criminal activity, pursuant to Criminal rule 41 (g).

Respectfully submitted,

Nikki Lee, Movant pro se ( Date)
Defendant, Case No. 12-CR-126

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of this motion upon counsel for the defendant government as follows:

Paul L Kanter, United States Department of Justice (EDWI) Office of the US Attorney, 517 E Wisconsin Ave - Rm 530, Milwaukee, WI 53202 by sending a copy electronically to his email at Email: paul.kanter@usdoj.gov; and to co-counsel for the government, Scott J Campbell, United States Department of Justice (EDWI), Office of the US Attorney, 517 E Wisconsin Ave - Rm 530, Milwaukee, WI 53202 by sending a copy electronically to his email at scott.campbell@usdoj.gov , both having been sent on the ____of November, 2013.

Nikki Lee, pro se (920) 713-7777

18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes, but is not limited to:

a. a sum of money equal to the proceeds derived from the offense, and

b. the following items of personal property:

1. One 2008 Haulmark motorcoach, VIN ending 4088;
2. One 2008 Haulmark trailer, VIN ending 4719;
3. One 1990 Harley Davidson motorcycle, VIN ending 0742;
4. One 1998 Harley Davidson motorcycle, VIN ending 1163;
5. One 2004 Harley Davidson motorcycle, VIN ending 9131;
6. One 2006 Harley Davidson motorcycle, VIN ending 7030;
7. One 2008 Harley Davidson motorcycle, VIN ending 0950;
8. One 2008 Harley Davidson motorcycle, VIN ending 0313;
9. One 2008 Harley Davidson motorcycle, VIN ending 0476;
10. One 1987 Yamaha motorcycle, VIN ending 3326;
11. One 1988 Yamaha motorcycle, VIN ending 5394;
12. One 1989 Yamaha motorcycle, VIN ending 6889;
13. One 1992 Yamaha motorcycle, VIN ending 8239;
14. One Custom Dragster with GM 8 cylinder engine;
15. One Honda Fortuna motorcycle, VIN ending 3806; and
16. One Geo Tracker vehicle, VIN ending 0174.
17. Custom motorcycle chopper



Exhibit A

United States District Court
District of Nebraska
Clerk of Court
Roman L. Hruska Federal Courthouse
111 South 18th Plaza
Suite 1152
Omaha, NE 68102

Thursday, November 21, 2013

Dear Clerk of Court:

Please file the enclosed motion which is a Rule 41(g) motion properly filed in this court as noted in the motion as it relates to property seized in this jurisdiction, and the motion must be filed where the seizure occurred.

I am proceeding pro se with this motion and am already determined to be an indigent defendant in the case noted, but my attorney is not employed for this district.

I have enclosed a SASE so that you can return a time-stamped copy to me at the address on the envelope.

If you have any questions, I can be reached at 920-713-7777.

Thank you for your assistance.

Nikki Lee
Pro se

RECEIVED
NOV 22 2013
CLERK
U.S. DISTRICT COURT
OMAHA

FedEx Express **NEW** Package US Airbill

FedEx Tracking Number 8042 2896 6953

**1 From**

Date 11-21-2013 [redacted]

Sender's Name Nikki Lee Phone 920 713-7777

Company

Address 3131 Trillium Lane

Dept./Floor/Suite/Room

City Oxford State MI ZIP 48371

**Your Internal Billing Reference**

**2 To**

Recipient's Name United States Dist. Court Phone

Company District of Nebraska - Clerk of Court

Address Roman L. Hruska Fed. Courthouse

We cannot deliver to P.O. boxes or P.O. ZIP codes. Dept./Floor/Suite/Room

Address 111 S. 18th Plaza Ste # 1152

Use this line for the HOLD location address or for continuation of your shipping address.

City Omaha State NE ZIP 68102

HOLD Weekday — FedEx location address REQUIRED. NOT available for FedEx First Overnight.

HOLD Saturday — FedEx location address REQUIRED. Available ONLY for FedEx Priority Overnight and FedEx 2Day to select locations.

8042 2896 6953

[redacted] Recipient's [redacted]

**4 Express Package Service** *To most locations.

NOTE: Service order has changed. Please select carefully.

**Packages up to 150 lbs.** For packages over 150 lbs., use the FedEx Express Freight US Airbill.

Next Business Day

- [ ] FedEx First Overnight — Earliest next business morning delivery to select locations. Friday shipments will be delivered on Monday unless SATURDAY Delivery is selected.
- [x] FedEx Priority Overnight — Next business morning.* Friday shipments will be delivered on Monday unless SATURDAY Delivery is selected.
- [ ] FedEx Standard Overnight — Next business afternoon.* Saturday Delivery NOT available.

2 or 3 Business Days

- [ ] FedEx 2Day A.M. — Second business morning.* Saturday Delivery NOT available.
- [ ] FedEx 2Day — Second business afternoon.* Thursday shipments will be delivered on Monday unless SATURDAY Delivery is selected.
- [ ] FedEx Express Saver — Third business day.* Saturday Delivery NOT available.

**5 Packaging** *Declared value limit $500.

- [x] FedEx Envelope*
- [ ] FedEx Pak*
- [ ] FedEx Box
- [ ] FedEx Tube
- [ ] Other

**6 Special Handling and Delivery Signature Options**

- [ ] SATURDAY Delivery — NOT available for FedEx Standard Overnight, FedEx 2Day A.M., or FedEx Express Saver.
- [x] No Signature Required — Package may be left without obtaining a signature for delivery.
- [ ] Direct Signature — Someone at recipient's address may sign for delivery. Fee applies.
- [ ] Indirect Signature — If no one is available at recipient's address, someone at a neighboring address may sign for delivery. For residential deliveries only. Fee applies.

**Does this shipment contain dangerous goods?** One box must be checked.

- [x] No
- [ ] Yes — As per attached Shipper's Declaration.
- [ ] Yes — Shipper's Declaration not required.
- [ ] Dry Ice — Dry Ice, 9, UN 1845 ____ x ____ kg
- [ ] Cargo Aircraft Only

Dangerous goods (including dry ice) cannot be shipped in FedEx packaging or placed in a FedEx Express Drop Box.

**7 Payment** *Bill to:*

Enter FedEx Acct. No. or Credit Card No. below. Obtain recip. Acct. No.

- [ ] Sender — Acct. No. in Section 1 will be billed.
- [ ] Recipient
- [ ] Third Party
- [ ] Credit Card
- [x] Cash/Check

[redacted] [redacted]

Total Packages 1 Total Weight 1 lbs. Credit Card Auth.

†Our liability is limited to US$100 unless you declare a higher value. See the current FedEx Service Guide for details.

641

Rev. Date 1/12 • Part #167002 • ©2012 FedEx • PRINTED IN U.S.A. SRF

Reusable

RT 298
ST 11.2
1
D
6953
11.22

TRK# 0200 8042 2896 6953
FRI - 22 NOV 10:30A
PRIORITY OVERNIGHT
NC AIAA
68102
NE-US OMA

FedEx Express E

To CLERK OF COURT
UNITED STATES US
US DISTRICT COURT
111 S 18TH PLZ
STE 1152
OMAHA NE 68102
(402) 440-3223
REF:
DEPT:

ORIGIN ... OXOD IN
BILL SENDER

To reuse, cover or mark through any previous shipping information.